Florence E. TAYLOR and James Taylor,
her husband, Plaintiffs,

v.

Allen H. BROWN et al., Defendants.

Superior Court of Delaware,
New Castle.

Feb. 25, 1975.

John C. S. Frank, Wilmington, for plaintiffs.

Charles K. Keil, Bayard, Brill & Handelman, Wilmington, for defendant Allen H. Brown and Counterclaimant Mary E. Cooper.

Joseph H. Flanzer, Wilmington, for defendant City of Wilmington.

## OPINION

O'HARA, Judge.

Plaintiffs, Florence E. Taylor and James Taylor, her husband, instituted this damage action against defendants Allen H. Brown ("Brown") and his mother, Mary E. Cooper ("Cooper"), for injuries suffered by Florence E. Taylor in an intersectional collision, and naming the City of Wilmington ("City") also a defendant alleging negligence in failing to erect a stop sign at the particular intersection. The action against Cooper was subsequently dismissed.

Brown moved to dismiss Paragraph 3(f) of plaintiffs' First Amended complaint while the City moved for summary judgment. Brown also filed a cross-claim against the City relying on the same theory as that of the plaintiffs with respect to the City's negligence. The City moved to dismiss the cross-claim. Cooper counterclaimed against plaintiff, Florence E. Taylor, for damages to her automobile.

The Court, in considering the possibility of liability of the City in connection with the erection of stop signs, will consider both the City's motion for summary judgment with respect to the plaintiffs' claim and its motion to dismiss with respect to Brown's cross-claim. At the same time, the Court will consider Brown's motion to dismiss Paragraph 3(f) of the plaintiffs' claim.

The accident occurred November 15, 1972, at approximately 5:55 P.M. at the intersection of Washington and Nineteenth Streets in the City of Wilmington. At this intersection Washington Street runs north and south and Nineteenth Street, east and west. Washington Street is a two-way street; Nineteenth Street, a one-way street. No stop sign had been erected at the entrance of Nineteenth Street into Washington Street.

Plaintiff, Florence E. Taylor, contends that 1) she was driving her automobile south on Washington Street at about 20 to 25 miles per hour, diminishing her speed about five miles per hour at each intersection, 2) as she came to the intersection of Washington and Nineteenth Streets, an automobile driven by Brown and proceeding east on Nineteenth Street entered the intersection at a high rate of speed without stopping, and 3) she applied her brakes but was unable to avoid colliding with the rear panel of the left side of the vehicle driven by Brown.

Brown contends that 1) he slowed almost to a full stop on approaching the crucial intersection, looked both ways, and seeing no automobile approaching in either direction, proceeded to cross the intersection at about 15 miles per hour, 2) when he was in the intersection, he first saw the headlights of plaintiff's automobile, and 3) he then accelerated but was unable to clear the southbound lane of Washington Street and avoid the collision.

Plaintiffs' position as to the City is that the City chose to designate certain streets as boulevards or through traffic streets by enacting § 37–21 of the Wilmington City Code and thereby assumed the duty of installing proper notice signs pursuant to the provisions of 21 Del.C. § 505.[1] Therefore, contend the plaintiffs, the City was negli-

---

1. Since the adoption of the Revised Delaware Code Annotated 1974, the substance of 21 Del.C. § 505 is found in 21 Del.C. § 504. All references to this statute in this opinion will be to the earlier annotation.

gent in failing to erect the proper sign at the intersection of Nineteenth and Washington Streets notifying Brown that Washington Street had been designated by ordinance as a boulevard.

Plaintiffs take a different position as to Brown and counterclaimant Cooper, contending that 21 Del.C. § 505 grants permissive authority to the City to give notice by placing stop signs at intersections of servient streets with preferred streets, as distinguished from a mandatory duty to do so. § 37–21 and § 505 require that a driver, traveling on a street intersecting a boulevard or through traffic street, come to a full stop before entering onto or crossing a favored street. According to plaintiffs, this requirement satisfies the essential element for establishing a thoroughfare, and, further, the statute and ordinance are not in conflict. Under this theory, Washington Street had been validly designated as a boulevard by ordinance and plaintiff, Florence E. Taylor, had the right of way regardless of the absence of a stop sign on Nineteenth Street.

Brown and counterclaimant Cooper contend that § 37–21 is, in fact, defective in that in conflicts with § 505, consequently, Brown was under no duty to stop before entering Washington Street, it not having been properly designated as a boulevard by the erection of a stop sign as required by statute. Their further contention is that Brown had the right of way under the "rule of the road" prescribed by 21 Del.C. § 4131, because he was the first to enter the intersection and, also, because the vehicle he was driving was on the right and the plaintiff's automobile was on the left.

City argues that there is no legal basis for imposing liability on it. The City contends that it is under no duty to erect stop signs at all streets intersecting boulevards or through traffic streets and in the absence of such duty, there can be no negligence. The City's reasoning is that neither the state statute nor city ordinance contemplates that the City shall be chargeable

with liability in tort in designating streets as boulevards and through traffic streets without erecting stop signs. The determination of whether or not to install traffic control devices, contends the City, is a governmental function and does not subject the municipality to liability in tort in the absence of special statutory provision indicating a legislative intent to create liability. The only effect on non-compliance with the notice requirements of § 505, says the City, is to render § 37–21 invalid.

21 Del.C. § 505 provides as follows:

"§ 505. Erection of stop signs at designated highways

The Department of Highways and Transportation with reference to State Highways, and local authorities with reference to highways under their jurisdiction, may designate main traveled or through highways by erecting at the entrances thereto from intersecting highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway. All such signs shall be illuminated at night or shall be so placed as to be illuminated by the headlights of an approaching vehicle or by street lights."

§ 37–21 of the Wilmington City Code states:

"Sec. 37–21. Entering or Crossing 'Boulevards' or 'Through Traffic' Streets.

(a) The Driver of a vehicle or coach traveling on a street intersecting a 'boulevard' or 'through traffic' street not otherwise marked or signed, on approaching a 'boulevard' or 'through traffic' street shall come to a full stop before entering onto or crossing the 'boulevard' or 'through traffic' street.

(b) The following streets and parts of streets are hereby declared to constitute 'boulevard' or 'through traffic' streets for the purposes of this section:

* * * * * *

Washington Street, from Front Street to north city line.

\*. \* \* \* \* \* "

The legislature has delegated power to the Department of Highways and Transportation with reference to state highways and to local authorities with reference to highways under their jurisdiction, to designate through highways and has provided the manner in which these agencies shall designate such highways. The manner prescribed in § 505 is by erecting appropriate signs notifying drivers of vehicles to come to a full stop before entering or crossing designated highways. Accordingly, the designation of a main traveled or through highway must be announced by the appropriate signs to invoke the rule that the driver of a vehicle must come to a full stop before entering or crossing such designated highway. This statutory provision applies to local authorities as well as to the Department of Highways and Transportation as follows: " . . . local authorities . . . may designate main traveled or through highways by erecting . . . signs notifying drivers of vehicles to come to a full stop . . ." However, the city ordinance cited above requires drivers of vehicles to come to a full stop before entering or crossing a street designated as a boulevard or through traffic street whether or not a notice sign has been erected. At the entrance to some streets designated as boulevards or through traffic streets, the ordinance requires a motorist to know at his peril that a particular street without a warning sign has preference over traffic on the intersecting street. Since the statute provides that warning signs or signals are necessary to the creation of an arterial or through highway and the ordinance provides that a street may be designated as protected or dominant without notice, the statute and the ordinance are in conflict.

■ The general rule is that a local traffic ordinance is not valid if it conflicts with a statute relating to the same subject. 147 A.L.R. 522. This principle has been unambiguously established by Delaware's decisional law. In the case of DiSabatino v. Ellis, Del.Supr., 184 A.2d 469 (1962), the Court compared an ordinance and a statute governing right of way at intersections. The ordinance obligated a driver to stop and then yield to other vehicles within the intersection or approaching so closely as to constitute an immediate hazard but permitted the driver, after so yielding, to proceed under a right to have other drivers yield to him. The statute, on the other hand, required the operator of a vehicle to come to a full stop at a stop sign and to enter or cross the highway only when such movement could be made in safety. The statute imposed a higher duty upon a driver controlled by a stop sign than did the ordinance. . The Court concluded that the ordinance was invalid as prescribing for the driver of a vehicle a standard of conduct different from that prescribed by the statute. The Court reasoned that the above construction was consonant with public policy to provide for uniform rules of the road and standards of duty.

Prouse v. Burley, Del.Super., 121 A.2d 291 (1956), is directly applicable to the questions before this Court. The acts examined by the Court in *Prouse* were 21 Del.C. § 505 and City Ordinance § 601, predecessor of 2 Wilmington City Code § 37–21. There the intersectional collision occurred at Washington Street and Thirty-eighth Street. § 601(a) designated Washington a boulevard. § 601(b) provided that the driver of a vehicle traveling on a street intersecting a boulevard should bring such vehicle to a speed not exceeding ten miles per hour before entering onto or crossing the boulevard. There was no slow sign at the intersection of Thirty-eighth Street with Washington Street. The *Prouse* Court stated "if Section 601(b) had required motor vehicle operators to come to a full stop before entering a 'Boulevard' street, it would be ineffective unless it also provided for the erection of a stop sign". Plaintiff was then charged with negligence in entering Washington Street at a speed in excess of ten miles per hour in violation of the provisions of § 601(b). The Court there granted the

plaintiff's motion to strike this allegation from the counterclaim on the ground that § 601(b) conflicted with 21 Del.C. § 505 and was of no force and effect.

The Court in *Prouse* observed:

"The Legislature has seen fit to grant to State and local authorities the right to designate main traveled or through highways if (1) stop signs are erected at the entrances thereto with the result that (2) traffic must halt before entering such throughways and (3) warning of the existence of the throughway is given. Section 601(b) of the City ordinance conflicts with Title 21 Del.C. § 505 in all three respects, viz.: (1) emasculating the requirement to come to a full stip, with the result that (2) traffic may proceed into or across such throughways at ten miles per hour instead of first stopping and (3) requiring no warning to the motorist of the existence of the throughway. The conditions imposed by Title 21 Del.C. § 505 are in the interest of public safety. Section 601(b) of the City ordinance disregards and conflicts with each of these conditions by substituting less rigid standards of safety and, what is most unfair, gives no warning to the motorist that he is about to enter a throughway."

■ As stated clearly by the Court in *Prouse*, § 601 disregarded and conflicted with § 505 of the Delaware Code in failing to provide for the erection of notice signs as a warning to motorists of the existence of a throughway. The absence of warning signs at intersections with designated boulevards led the *Prouse* Court to declare § 601(b) invalid. The rationale there leads to the inevitable conclusion that § 37–21 of the Wilmington City Code is also invalid when tested against § 505.

The next question to consider is whether or not § 505 imposes a duty on the City to erect stop signs at all intersections of secondary streets with boulevards. City contends that the only effect of designating certain streets as boulevards without re-

quiring the erection of stop signs as provided by § 505 is the invalidity of the ordinance and not the imposition of tort liability on the City. City cites Hoy v. Capelli, 48 N.J. 81, 222 A.2d 649 (1966) as authority for its position that governmental determination to install or not to install traffic control devices cannot be ground for a cause of action. In *Hoy* a collision occurred at an intersection where a traffic light had been removed by the city. Although New Jersey has developed a special rule that a municipality is liable for damages resulting from active wrongdoing as distinguished from failure to act, the Court in *Hoy* states that "there are certain kinds of acts or omissions of government, no matter how they are categorized, defined or labelled or how governmental immunity from suit is to be regarded, which should not give rise to tort liability". The Court there concluded that governmental policy decisions involving discretion and revenue could not be a basis for imposing liability on the city.

■ The relevant consideration in determining whether the City is under a duty to erect stop signs at intersections of streets designated as boulevards is the validity of the ordinance rather than the governmental nature of the decision to erect or not to erect traffic control devices. The act of designating certain streets as boulevards is a nullity in the absence of erecting appropriate signs. The ordinance has the same effect as if it never existed and it is incapable of giving rise to any rights or duties. See Prouse v. Burley, supra.

■ In the absence of a stop sign at the entrance of Nineteenth Street into Washington Street, Washington Street was not a boulevard or through traffic street at the time of the collision. Therefore, the provisions of 21 Del.C. § 4131 governed the right of way at the intersection.

21 Del.C. § 4131 reads:

"§ 4131. Vehicle approaching or entering intersection.

(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

(b) When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

 Under § 4131 Brown had the right of way and plaintiff, Florence E. Taylor, was under a duty of yielding this right of way to him. As recognized by the Court in Maxwell v. Kirkpatrick, 22 Tenn. App. 21, 116 S.W.2d 340 (1937), such a statute does not cover all the duties of motorists at intersections. A motorist is at least under a further duty of exercising ordinary care to avoid injuring another by keeping a proper lookout and control of his vehicle and by driving at an appropriately reduced speed when approaching and crossing an intersection. The speed which is appropriate is that which is reasonable and prudent under the actual and potential hazards then existing. Thus, a motorist may be guilty of negligence in failing to exercise due care in the circumstances even though he has the right of way at the intersection.

The Court concludes that the ordinance involved is ineffective. As a consequence, Brown's negligence has not been established via an ordinance violation. Whether or not Brown is otherwise negligent remains to be established. Brown's motion to dismiss Paragraph 3(f) of plaintiffs' First Amended complaint should be granted. Furthermore, the Court, having concluded that City did not violate any standard of care imposed upon it, concludes that its motion for summary judgment against plaintiffs and its motion to dismiss against defendant Brown should be granted.

It is so ordered.

